# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-0553V
UNPUBLISHED

| | |
|---|---|
| KLAUDIA AUBUCHON,<br><br>                Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: March 3, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset;  Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for petitioner.*

*Voris Edward Johnson, U.S. Department of Justice, Washington, DC, for respondent.*

## FINDINGS OF FACT[1]

On April 15, 2019, Klaudia AuBuchon filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on December 7, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination.

## I.      Relevant Procedural History

On April 15, 2019, Ms. AuBuchon filed her petition, along with Exhibits 1-7 including medical records and an affidavit (ECF No. 1). On June 3, 2019, Petitioner filed Exhibit 8 containing medical records (ECF No. 8). The initial status conference was held on June 3, 2019, after which Petitioner was directed to file additional medical records and a Statement of Completion (ECF No. 9). On June 4, 2019, Petitioner filed Exhibit 9 (ECF No. 10) and a Statement of Completion (ECF No. 11). Petitioner filed additional medical records in January and May of 2020 (ECF Nos. 15 and 19).[3]

On July 29, 2020, Respondent filed his Rule 4(c) Report (ECF No. 23). Respondent asserted in it that the preponderance of the evidence did not establish that the onset of pain occurred within 48 hours of vaccination, and thus Petitioner could not meet the requirements of a Vaccine Injury Table ("Table") SIRVA claim. *Id.* at *7-8. Respondent further asserted that Petitioner also had not provided evidence sufficient to establish causation-in-fact, citing records in which health care providers diagnosed Petitioner with cervicalgia and referred to the contribution of cervical pathology to Petitioner's shoulder symptoms. *Id.* at *8.

On November 30, 2020, Petitioner filed Exhibit 12, a supplemental affidavit addressing onset (ECF No. 25). On December 7, 2020, Petitioner filed a Statement of Completion indicating that all relevant medical records had been filed (ECF No. 27).

On February 16, 2021, I issued an order allowing the parties to file additional evidence by March 2, 2021, and stated that after that date I intended to issue a ruling on onset. Scheduling Order (non PDF), issued Feb. 16, 2021. On March 2, 2021, the parties filed a joint status report indicating that they did not intend to file additional evidence concerning onset (ECF No. 28). The issue of onset is now ripe for resolution.

## II.     Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours of vaccine

---

[3] On January 22, 2020, a telephonic status conference was held because the petition in this case and another case filed on Petitioner's behalf by a different attorney, *AuBuchon v. Sec'y of Health & Human Servs.*, 19-1833, sought relief related to the same injury and vaccination. Scheduling Order, issued Jan. 22, 2020 (ECF No.16). During the status conference, counsel confirmed that Petitioner wished to proceed with the case filed under this docket number rather than the parallel matter. *Id.* at *1. Petitioner filed a motion to voluntarily dismiss the other case, 19-1833, and an order concluding proceedings in that case was issued on February 27, 2020. *AuBuchon v. Sec'y of Health & Human Servs.*, No. 19-1833, Order Concluding Proceedings, issued Feb. 27, 2020 (ECF No. 9).

administration as set forth in the Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

 The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Finding of Fact

I make the findings after a complete review of the record to include all medical records, affidavits, respondent's Rule 4 report, and additional evidence filed.  Specifically, I rely upon on the following evidence:

- Exs. 1 at 1 and 2 at 33, documenting that a flu vaccine was administered intramuscularly into Petitioner's left deltoid on December 7, 2016.

- Ex. 2 at 21, a record of Petitioner's December 22, 2016 appointment with Dr. Lomeli for other concerns, without reference to Petitioner's left arm.

- Ex. 2 at 25, a record of Petitioner's February 22, 2017 appointment with Dr. Lomeli for other matters without mention of Petitioner's left arm.

- Ex. 2 at 17-19, a record of Petitioner's March 14, 2017 appointment with Dr. Ijadi, reporting a two month history of left shoulder pain starting a few days after receiving her flu shot and assessing her with rotator cuff syndrome or deltoid bursitis secondary to shoulder injury related to vaccine administration.

- Ex. 2 at 28, a record of Petitioner's March 16, 2017 visit with Dr. Cabral reporting left shoulder pain for four months since her flu shot.

- Ex. 2 at 9-12, a record of Petitioner's March 17, 2017 visit with Dr. Ijadi, noting a four month history of left shoulder pain and listing the trauma type

as "Flu shot." This record also states, "Left shoulder pain status post flu shot." *Id.* at 9. Dr. Ijadi's impression was "Left shoulder pain secondary to flu shot." *Id.* at 11.

- Ex. 2 at 40, a record of Petitioner's March 17, 2017 physical therapy evaluation, noting that Petitioner reported "pain in the left shoulder since approximately December of last year . . . . She reports that she feels that flu shot she receiving in December contributed the pain as she started having pain after that incident."

- Ex. 4 at 15, a record of Petitioner's June 14, 2017 appointment with Dr. Srinivasan, noting that Petitioner presented with "LEFT ARM PAIN FOLLOWING FLUE [sp] SHOT INJECT DECEMBER 7, 2016 PAIN PERSINTEN SENCE."[4] While this record also indicates that the symptoms had been existing for seven months, which arguably would put onset in *November*, I assign more weight to the specific date recorded, December 7, 2016, than to the approximation of seven months of pain.

- Ex. 4 at 6, a record of Petitioner's July 8, 2017 appointment with Dr. Srinivasan, indicating that Petitioner's left shoulder pain had been "existing for 7 month(s)," which would put onset in December.

- Ex. 5 at 9, a record of Petitioner's August 1, 2017 appointment with Dr. Shomer,[5] indicating that she "received flu vaccine injection in L deltoid in December 2016. Post injection, patient reports constant onsets of headache, lethargy, coughing, nasal discharge, sinus pressure/congestion, and L arm pain."

- Ex. 10 at 52, an August 3, 2017 patient information form listing the date of injury as 12/7/16 and indicating "didn't have any injury except the shot flu shot."

- Ex. 10 at 16, an August 30, 2017 record of neurologist Dr. Nudleman, indicating that Petitioner reported receiving a flu shot in her left deltoid on December 7, 2016 and developed associated pain and swelling. Dr.

---

[4] Admittedly, this record inaccurately indicates that Petitioner is male. Ex. 4 at 15. However, based on my experience reviewing medical records, this error does not cast doubt on the accuracy of the record as to the onset of shoulder pain.

[5] The record does not indicate Dr. Shomer's specialty. The August 1, 2017 record indicates that he has MD and PhD degrees, and list him as a "physician and surgeon." Ex. 5 at 9. The objective section of the record appears to refer to examination of Petitioner's eyes and indicates that he referred her for a "full systemic evaluation." *Id.* However, the records produced by his office also include results of blood tests and x-rays of Petitioner's sinuses and chest. *See generally* Ex. 5.

Nudleman stated, "[b]ased on the patient's findings, it is felt that she sustained an adverse reaction to a flu vaccine injection into the left deltoid. There appears to be a chronic myositis or inflammation of the deltoid." *Id.* at 19.

- Ex. 4 at 3, a record of Petitioner's September 22, 2017 appointment with Dr. Srinivasan, reporting shoulder pain for nine months, which would mean December. Although the first page of this record incorrectly indicates that Petitioner's shoulder pain was in her *right* arm, the same record assessed Petitioner as having pain in her *left* shoulder and having *left* shoulder and deltoid tendinitis. Ex. 4 at 4. Dr. Srinivasan's other records refer only to left arm pain. *See generally* Ex. 4. In this context, the reference to right arm pain on Ex. 4 at 3 appears to be a typographical error and does not cast doubt on the record's information as to onset.

- Ex. 12, Petitioner's supplemental affidavit. Petitioner asserts that she was sitting and the administrator was standing when the shot was administered. *Id.* at ¶ 2. She states that when the vaccine was administered it felt very different from other shots she had received. *Id.* Petitioner described the experience:

> It felt like the liquid was building pressure inside my shoulder. It was very painful when she finished injecting the vaccination, the pain was about 6 or 7 out of 10 (10 being excruciating). However the nurse said this was normal and should go away in a few days. My shoulder continued to hurt later that day and I had difficulty with movement due to the pain. Due to the pain I could not raise, rotate or extend my arm as usual. It was a stabbing pain which felt like it was tearing my entire arm. I also had to reduce my work hours due to the pain.

> The following week after my vaccination the pain had continued since then but started increasing more and waking me up during the night. This continued for the following month, sometimes the pain was a dull pain and other times a sharp pain.

Ex. 12 at ¶¶ 2-3.

The above medical entries preponderantly support a finding that Petitioner experienced left arm pain within 48 hours of vaccine administration.

I acknowledge that Petitioner had two medical appointments between the administration of the flu vaccine and the first appointment recording her left shoulder pain, on December 22, 2016 and February 22, 2017, and that neither of these records contain any indication that she reported left shoulder pain from her flu shot. Ex. 2 at 21-27. In her affidavit, Petitioner asserts that while these records are silent on her shoulder pain, she did mention her left shoulder pain to her doctor. Ex. 12 at ¶ 4. Thus, she alleges that at the December 22, 2016 appointment she reported her left shoulder pain to the nurse at the beginning of the visit, who told her to tell the doctor about it. Ex. 12 at ¶ 4. But when she did (purportedly) report the pain to the doctor, the doctor responded that there was not enough time to address it in that appointment and that she should make another one to deal with that specific issue. *Id.*

Concerning the February 22, 2017 appointment, Petitioner asserts that she again mentioned her left shoulder pain to the doctor, but her concerns were (again) not addressed:

> I was told the flu shot doesn't cause the pain I was describing. I said I have stabbing pain since the flu shot injection and the pain since that day hasn't gone away. They were very dismissive when I claimed that the pain was from the flu shot.

Ex. 12 at ¶ 5.

I note that at both the December 22, 2016 and February 22, 2017 appointments, Petitioner was seen for multiple other medical concerns. I thus find her explanation for why the first record makes no mention of post-vaccination pain (that she was told to make another appointment to address her shoulder pain) to be reasonable. And the rationale for why the second visit is silent on shoulder pain (the treater did not find the complaint legitimate) is consistent with the fact that some treaters may not necessarily possess awareness of SIRVA as a "real"/cognizable vaccine injury.

Accordingly, the fact that these records (both of which reflect opportunities for the Petitioner to inform a treater of her SIRVA) are silent on the matter does not totally undercut her allegations of close-in-time pain. Of course, the lack of immediate contemporaneous evidence of pain complaints *does* impact the damages potentially recoverable in this case. The fact that Petitioner did not make an appointment specifically to address her left shoulder pain until March 2017, despite her purported complaints about it speaks to the severity of her injury, and thus her damages, since she did not deem the problem concerning enough to impress upon a treater its importance. But it does not establish that she was not experiencing shoulder pain *at all* at the time of the December 2016 and February 2017 appointments.

I also acknowledge that the medical records concerning onset are quite variable in this case, and do not consistently identify a precise onset date. For instance, one record refers to onset as *two months* prior to a March 14, 2017 appointment, which would purport to put it in *January* (Ex. 2 at 17). The same record also indicates that her pain started "FEW DAYS AFTER RECEIVING FLU SHOT," which would put onset in *December. Id.* "Few" is an inexact description and does not necessarily place onset within, or outside of, the relevant 48 hour period.[6] Nevertheless, it strongly suggests that the onset occurred close in time to the vaccination.

A subsequent March 16, 2017 record refers to pain since a flu shot *four months* ago, which arguably could put onset in *November*. Ex. 2 at 28. Similarly, two records from March 17, 2017 indicate Petitioner's pain began *four months* earlier (which would suggest November) but also refer to her pain as starting "post flu shot" or starting after her flu shot, which would put onset in December at the *earliest*. Ex. 2 at 9, 40. A March 24, 2017 record indicates that her pain began "3 Months ago on 12/24/2016." Ex. 2 at 34. This would purport to put onset 17 days after vaccination. However, the same sentence lists the injury as "injected flu shot," suggesting a closer temporal relationship between Petitioner's flu vaccine and arm pain. *Id.* And a July 7, 2017 record indicated that her pain has been present for six months, possibly suggesting onset in *January*. Ex. 4 at 9.

After a comprehensive review of the record as a whole, I find that the record supports a finding that the onset of Petitioner's left shoulder pain was closely temporally associated with her December 7, 2016 flu shot, sufficient to find preponderantly (albeit barely) that the Table onset requirement is met. Medical record references to how many months earlier Petitioner's pain began alternatively, and inconsistently, suggest both an *earlier* and *later* onset. However, the records consistently indicate that Petitioner related her pain to her flu shot. Ex. 2 at 9, 17, 28, 34, 40; Ex. 4 at 15, Ex. 5 at 9; Ex. 10 at 16, 48. And there are records suggestive of a close-in-time onset.

The above conclusion is also supported by records not long post-vaccination showing that several of Petitioner's treating physicians noted a likely relationship between her flu vaccination and left shoulder pain. *See* Ex. 2 at 19 (March 17, 2017 record of Dr. Ijadi assessing Petitioner with rotator cuff syndrome of left shoulder and indicating his impression was that her injury was "RTC [rotator cuff syndrome] OR DELTOID BURSITIS *2/2 [due to] SHOULDER INJURY RELATED TO VACCINE ADMINISTRATION.* MULTIPLE CASE REPORTS SHOWING DELTOID AND SUBACROMIAL BURSITIS, SEPTIC ARTHRITIS, RTC TEARS SHORTLY AFTER VARIOUS SHOULDER VACCINE INJECTIONS") (emphasis added); Ex. 2 at 35 (March 24, 2017 record of Dr. Begovic assessing Petitioner with chronic left shoulder pain and noting her impression:

---

[6] The Merriam-Webster online dictionary includes three definitions of few: (1) not many persons or things; (2) consisting of or amounting to only a small number; at least some but indeterminately small in number; (3) a small number of units or individuals; a special limited number. *See* Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/few (visited Mar. 3, 2021).

"?ETIOLOGY POSIBLE DUE TO FLU SHOT"; Ex. 6 at 1 (noting Petitioner's left shoulder symptoms and indicating that they were "probably caused by flu shot – influenza which was done 12/07/2016 in Pomona Valley Health Center CA"; Ex. 6 at 2-3 (noting association of left shoulder pain and flu vaccination); Ex. 10 at 14 (discussing Petitioner's injury and stating, "[c]ausation of the chronic pain to the left deltoid is due to the Flu vaccination"; Ex. 10 at 19 ("[b]ased upon the patient's findings, it is felt that she sustained an adverse reaction to a flu vaccine injection into the left deltoid").

Accordingly, and despite Respondent's reasonable objections, I find that there is preponderant evidence to establish that the onset of Petitioner's pain occurred within 48 hours of vaccination.

## V.    Scheduling Order

In his Rule 4(c) Report, Respondent's sole objection to a Table SIRVA case was onset, which herein I find has been established to be within the time set forth in the Table. Thus, I anticipate that this case will soon proceed to damages discussions.

Accordingly, IT IS ORDERED that **Respondent shall file, by no later than <u>Friday, April 02, 2021</u>, an amended Rule 4(c) Report.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master